McFarlahd, J.,
delivered the opinion of the Court.
The plaintiff brought this action to recover of the defendants, as common carriers, the value of fifteen bales of eotton, which he alleges was delivered to the defendant about the month of January, 1862, at their depot at Salisbury, in Hardeman county, to be carried to Memphis, but which was never done, whereby the *256 cotton was lost. The verdict and judgment were for the defendant, and the plaintiff appealed in error.
The declaration contains four counts. The first is in the form prescribed by the Code. The second and third are in common law form, all charging that the cotton was delivered to and received by the defendant, to be carried to Memphis, and that the defendant failed to carry the cotton, and through the carelessness of its agents the same was lost. The fourth count charges that the cotton was tendered and delivered to the defendant as common carriers, to be carried to Memphis, but that the defendant’s servants and agents, through carelessness and negligence, failed and refused to carry the cotton, and by their carelessness it was lost at Salisbury Station.
The defendant pleaded a general denial, upon which issue was taken.
The facts claimed by the plaintiff, as established, are, that about the 11th of January, 1862, he purchased the fifteen bales of cotton at Salisbury Station, in Hardeman county, of two different parties, Smith and Dennis. Before purchásing the cotton he called on one Williams, the depot agent of the defendant at that place, to find out from him if he would receive the cotton and transport it for him. Williams agreed to receive the cotton and forward it to the plaintiff’s factors at Memphis, as soon as the road could, and expressed the hope and belief that the cotton could be forwarded the next day. Upon this the plaintiff purchased the cotton, and informed Williams that it should be delivered to him next day, and told *257 him he must forward it, and be said be would do-so. And on the next day it was hauled to .and delivered upon the platform of the defendant’s depot at Salisbury, by an agent of the plaintiff, who notified Williams, the depot agent, that the cotton was there,: and demanded a receipt for it, which Williams refused to give, saying that the company were not receipting-for any cotton, but that he would ship it as soon as he could get cars. There was a large quantity of' cotton then on the platform of the depot, and fireproof indicates that the defendant’s road was then, greatly crowded and pressed with the transportation of confederate troops. Afterward this cotton, with the-other cotton at the depot, was destroyed by fire, but how the fire originated does not clearly appear; nor-is it clearly shown how long it was after the cotton was placed upon the platform of the depot, before the fire occurred. One witness says it was burned the-next night afterward, but another witness says that the cotton remained on the platform about two weeks,, and that during this time, as the agent and friend of Watson, and at his.request, he called several times upon Williams to know why the cotton was not forwarded, and was told that the reason was that he had no cars, that the road was crowded with the transportation of confederate troops. This latter statement was brought out upon cross-examination, and was-objected to by the plaintiff.
The charge of the Circuit Judge was: That if the defendant’s agent agreed with the plaintiff to receive the cotton and -forward it as soon as he could *258 do so, and that in accordance with this contract the cotton was delivered to the defendant’s agent, and received by him, to be forwarded according to contract, then if the cotton was not transported, the plaintiff was entitled to recover its value. But upon the other hand, if, after the agreement was first made, the cotton was brought to the depot, and the agent refused to receive it, then there could be no recovery, and the verdict should be for the defendant. This is the substance of the entire charge.
Several propositions were submitted to the court by the plaintiff’s counsel, and refused; the court being of opinion the charge given covered the entire case.
Several of the propositions submitted, embrace in different forms, the doctrine that a common carrier when he receives goods for transportation without any special contract limiting their liability, he can only be excused by the act of God or the public enemy. This is not doubted as a general proposition, but this proposition was necessarily included in the charge of the Judge, and decided in favor of the plaintiff — for the jury were told, that if the defendant’s agent received the cotton, and it was not transported, the verdict should be for the plaintiff.
The case evidently turned upon the .question whether or not the agent received the cotton. Upon this the court was asked to instruct the jury, that the agent had the power to bind the company by an agreement to receive the cotton, although he might have . had instructions to the contrary, which were not communicated to the plaintiff — and if the *259 cotton was in faet received, then it was not necessary that there should be any receipt, or entry in the books of the company in order to make them liable.
We are of opinion, that the depot agent in charge of the business of receiving and forwarding freights, in the absence of special instructions made known to the public, would have the power to bind the company by a contract to receive and forward freights, and such contract might be made before the freight was actually tendered or delivered. This was held in the case of Denning v. The Grand Trunk Railway, in the Supreme Court of New Hampshire, reported in 2 American Reports, 267; and this, we think, is in accordance with sound principle.
If, then, the agent Williams, when the plaintiff called upon him the day before the cotton was hauled to the depot, made an absolute agreement in consideration of the freights to be paid, to receive the cotton when tendered, and to forward it as soon as he could, then the contract was complete, and the force of it could not be avoided by Williams refusing to receive the cotton when tendered the nest day — as the charge of the Judge seems to imply. If the contract had already been made, the company were bound by it, especially if it should appear that the plaintiff purchased the cotton upon the faith of this agreement. We express no opinion as to the effect and extent of the agreement made between the plaintiff and the agent Williams. Whether Williams agreed to receive the cotton on the next day, or whenever tendered, and forward as soon thereafter as the company were able, or *260 whether bis agreement only bound ¡the company to-recede the cotton so soon as they might have cars to transport it — is a question for the jury to determine. Upon the assumption that the former was the real agreement, then we hold that the company was bound to receive the cotton when tendered the next day, and if they suffered it left at their depot without objection, it was at their risk from that day. The risk of the common carrier begins upon the delivery and acceptance of the goods: Chitty Con., 73, 83. On the other hand, if the latter was the real contract, the company was not bound to receive the cotton, until they obtained the -means of transporting it.
. The fact that there was then a large quantity of cotton waiting transportation at the depot; that the cars of the road were engaged transporting troops; that no receipts were given to other parties; and no receipt was given in this case; — if such be the facts, are all important matters of evidence, bearing upon the question in dispute, but are not conclusive.
We are of opinion, that the question was not fully presented to the jury by the charge, and are therefore constrained to reverse the judgment.